IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TODD UNDERWOOD,** | ) | |
| **individually and on behalf of** | ) | |
| **other past and present employees** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 07-2268-KHV |
| | ) | |
| **NMC MORTGAGE CORPORATION,** | ) | |
| **PREVIOUSLY KNOWN AS MYERS** | ) | |
| **NATIONAL MORTGAGE COMPANY,** | ) | |
| **and RANDY KENT,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____) | | |

**MEMORANDUM AND ORDER**

Plaintiffs bring suit against NMC Mortgage Corporation ("NMC"), formerly knows as Myers National Mortgage Company, and Randy Kent, on behalf of themselves and others similarly situated. Plaintiffs seek recovery of unpaid wages and overtime under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 et seq. This matter comes before the Court on Plaintiffs' Motion For Conditional Collective Action [Certification] And Expedited Notice To Potential Opt-in Plaintiffs (Doc. #15) filed August 8, 2007. For reasons stated below, the Court sustains the motion.

**Legal Standards**

Under 29 U.S.C. § 216(b), plaintiffs seek conditional certification of a collective action for purposes of providing notice to putative class members. Section 216(b) provides in part that "[a]n action . . . may be maintained against an employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This provision

provides the exclusive procedural mechanism for class certification in actions under the FLSA. Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 679 (D. Kan. 2004). Though the FLSA does not define the phrase "similarly situated," the Tenth Circuit has approved of an *ad hoc* approach by which the court determines on a case-by-case basis whether the members of the putative class are similarly situated. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, the court engages in a two-step process. First, the court makes an initial "notice stage" determination whether plaintiffs are "similarly situated" which requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan. Id. at 1102 (quoting Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 678 (D. Colo. 1997)). By this determination, the court decides whether a collective action should be certified for purposes of sending notice of the action to potential class members. Brown, 222 F.R.D. at 679. This initial step creates a lenient standard which typically results in conditional certification of a representative class. Gieseke v. First Horizon Home Loan Corp., 408 F. Supp.2d 1164, 1166 (D. Kan. 2006). Under the second step initiated at the close of discovery, the court utilizes a stricter standard of "similarly situated" which requires evaluation of several factors, including: (1) disparate factual and employment settings of individual plaintiffs; (2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. Thiessen, 267 F.3d at 1102-03.

**Factual Background**

Plaintiffs' amended complaint alleges in pertinent part as follows:

NMC is a residential mortgage lender which operates in twelve states: Arizona, Colorado, Georgia, Indiana, Kansas, Maryland, Missouri, New Mexico, Pennsylvania, Tennessee, West Virginia and Wyoming. Within the last three years, plaintiffs have worked for NMC as financial specialists. Financial specialists' duties include receiving incoming phone calls from potential customers and

completing mortgage applications for phone customers. NMC paid its financial specialists on commission only. Until at least March of 2005, financial specialists regularly worked more than 40 hours per week. NMC has not compensated plaintiffs for overtime and has not paid plaintiffs minimum wages. Since March of 2005, NMC has instructed its financial specialists to turn in time cards which indicate that they worked exactly 40 hours per week. NMC rejected all time cards which did not indicate 40 hours of work. After March of 2005, financial specialists usually worked over 40 hours per week.

In support of these allegations, plaintiffs provide the declaration of Nick Underwood, <u>see Declaration Of Nick Underwood</u> attached as Exhibit B to <u>Plaintiffs' Memorandum Of Law In Support Of Their Motion For Conditional Collective Action [Certification] And Expedited Notice To Potential Opt-in Plaintiffs</u> ("<u>Plaintiffs' Memorandum</u>") (Doc. #16) filed August 8, 2007. That declaration states as follows:[1]

From 2001 until 2003, Underwood worked as a financial specialist at NMC. In 2003, Underwood became regional manager of NMC's Overland Park, Kansas office. From at least 2001 until approximately March of 2005, NMC required financial specialists at its Overland Park office to work Mondays through Thursdays from 8:30 a.m. until 7:00 p.m. with no dinner break. On Fridays, the financial specialists alternated between working from 8:30 a.m. until 2:00 p.m. and working 8:30 a.m. until 5:00 p.m. NMC did not pay financial specialists minimum wages or overtime wages. In early 2005, Randy Kent, NMC President, told Underwood that NMC needed to change the financial specialists' schedules because other mortgage companies had been sued for violating minimum wage and overtime

---

[1] In deciding the motion for conditional certification at the initial stage, the Court may consider affidavits and declarations in support of plaintiffs' allegations. See <u>Baldozier v. Am. Family Mut. Ins. Co.</u>, 375 F. Supp.2d 1089, 1093 (D. Colo. 2005) (motion for initial certification granted based on substantial allegations and plaintiffs' declarations); <u>Brown</u>, 222 F.R.D. at 680 (at notice stage of certification, court looks to substantial allegations and plaintiffs' affidavits).

laws. In March of 2005, Bill Galloway, NMC's Chief Operating Officer, instructed Underwood to tell all financial specialists to fill out weekly time cards which indicated that they had worked exactly 40 hours per week, regardless how many hours the financial specialist actually worked. NMC rejected any time card that reflected that a financial specialist had worked more than 40 hours in a week. After March of 2005, financial specialists at NMC's Overland Park branch commonly worked more than 40 hours per week even though their time cards indicated otherwise.

Plaintiffs also provide the declaration of Brian Weatherman, see Declaration Of Brian Weatherman attached as Exhibit C to Plaintiffs' Memorandum (Doc. #16). That declaration states as follows:

From 2001 until 2002, Weatherman worked as a financial specialist at NMC. In 2003, Weatherman became regional manager of NMC's branch offices in Kansas City, Missouri, Atlanta, Georgia and St. Louis, Missouri. In August of 2004, Weatherman became branch manager of NMC's Indianapolis, Indiana branch. From at least 2001 until approximately March of 2005, NMC required financial specialists at its Indianapolis branch to work Mondays through Thursdays from 8:30 a.m. until 7:00 p.m. with a one hour break for lunch and no dinner break. On Fridays, the financial specialists alternated between working from 8:30 a.m. until 2:00 p.m. (with no lunch break) and working 8:30 a.m. until 5:00 p.m. with a one hour lunch break. During this time, NMC did not pay financial specialists minimum wages or overtime wages. In early 2005, Kent told Weatherman that NMC needed to change the financial specialists' schedules because other mortgage companies had been sued for violating minimum wage and overtime laws. In March of 2005, Galloway instructed Weatherman to have all financial specialists fill out a time card which indicated that they had worked exactly 40 hours per week, regardless how many hours the financial specialist actually worked. NMC rejected any time card that reflected that a financial specialist had worked in excess of 40 hours in a week. After March of 2005,

financial specialists at NMC's Indianapolis branch commonly worked more than 40 hours per week even though their time card indicated otherwise.[2]

Based on the allegations of the complaint and supporting evidence, plaintiffs seek certification of a collective action under Section 216(b) of the FLSA which includes all financial specialists whom NMC employed from August 8, 2004 to the present.

## **Analysis**

Plaintiffs argue that the potential class members are similarly situated because they all perform work as financial specialists and pursuant to established company policy, NMC has treated them the same by not paying minimum wages or overtime wages.  Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.  Brown, 222 F.R.D. at 681.  Plaintiffs have satisfied the low threshold required to demonstrate at the notice stage that all putative class members are similarly situated for purposes of conditional collective action certification under Section 216(b) of the FLSA.  See, e.g., Thiessen, 267 F.3d at 1102 (nothing more than substantial allegations required at notice stage of certification); Baldozier, 375 F. Supp.2d at 1093 (considering allegations and declarations at notice stage); Brown, 222 F.R.D. at 680-81 (considering allegations and affidavits at notice stage); Williams v. Sprint/United Mgmt. Co., 222 F.R.D. 483, 485 (D. Kan. 2004) (at notice stage, court analyzes certification under lenient standard looking to substantial allegations and plaintiff's affidavits).

Defendants argue that plaintiffs have not made a factual showing that the putative class members

---

[2] In addition to Underwood and Weatherman's declarations, other plaintiffs filed affidavits in support of their allegations.  Their affidavits, however, do not indicate when they worked for NMC. See Affidavit Of Leo Harvey, attached as Exhibit D to Plaintiffs' Memorandum (Doc. #16); Affidavit Of Kyle Clevenger, attached as Exhibit E to Plaintiffs' Memorandum (Doc. #16).

were victims of a common policy or plan that violated the FLSA. Specifically, defendants assert that financial specialists signed a compensation policy which stated that they agreed not to work overtime without obtaining authorization from their supervisor. Because plaintiffs have not produced evidence that they obtained written authorization to work overtime, defendants argue that plaintiffs have not demonstrated an FLSA violation. Plaintiffs correctly point out, however, that employees cannot waive their right to overtime wages. The Court finds that plaintiffs have adequately alleged an FLSA violation sufficient for conditional certification.

Defendants also argue that collective action certification is not appropriate because the determination of whether any particular class member has a meritorious claim will depend on whether such employee worked overtime and whether defendant NMC had knowledge of the employee's time at work. Any disparate employment settings among putative class members is a factor to be considered at the second stage of the *ad hoc* analysis after completion of discovery. See Thiessen, 267 F.3d at 1103 (listing factors, including disparate employment circumstances, to be considered during second stage analysis of certification).

Finally, defendants argue that judicial economy militates against certification because the putitive class member are located across the country and had different managers and supervisors. See Basco v. Wal-Mart Stores, Inc., No. 00-3184, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (potential plaintiffs performed different jobs at different locations and were subject to decisions by different supervisors). Plaintiffs have adequately alleged that the putative class members all performed the same jobs and were subject to a unitary policy concerning their work schedule.

Because plaintiffs have sufficiently alleged that all putative class members are similarly situated under Section 216(b) of the FLSA, certification of a conditional collective action including all financial specialists whom NMC employed from August 8, 2004 to the present is appropriate for purposes of

providing notice of the action to all putative members.[3] Plaintiffs are entitled to specific discovery of the names, addresses and telephone numbers of the putative class members. Vaszlavik, 175 F.R.D. at 681-82. Accordingly, **on or before October 22, 2007**, defendants shall provide plaintiffs the names and last known addresses of each financial specialist employed by NMC at any time from August 8, 2004 to the present. Defendant shall also provide the telephone and cellular telephone numbers and e-mail addresses of each financial specialist employed by NMC at any time from August 8, 2004 to the present if defendant possesses such information.

Plaintiffs have provided a proposed Notice Of Class Action Lawsuit to be sent to NMC's current and former financial specialists. See Exhibit F to Plaintiffs' Memorandum (Doc. #16-7). The Court has reviewed the proposed notice and finds that it should be approved.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion For Conditional Collective Action [Certification] And Expedited Notice To Potential Opt-in Plaintiffs (Doc. #15) filed August 8, 2007 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that **on or before October 22, 2007**, defendants provide plaintiffs the name, last known address and telephone number of each financial specialist employed by NMC at any time from August 8, 2004 to the present. Defendants shall also provide the telephone and cellular

---

[3] As noted above, plaintiffs request conditional certification of a class of individuals who worked at NMC from August 8, 2004 – three years before plaintiffs filed their motion for conditional certification – to the present. Under 29 U.S.C. § 256, an opt-in plaintiff is deemed to have commenced his or her claim when he or she files notice of consent to join the collective action. Thus, with regard to individuals who have not yet joined the action, the maximum reach of the limitations period for any willful violation of the FLSA would extend back only three years from the date of this order. See Pivonka, 2005 WL 1799208, at *4 (conditionally certifying representative FLSA action to include similarly situated persons employed within three years before order). Any person who has not worked for NMC within the last three years cannot now opt in because that person's claim for unpaid overtime is time-barred. The Court will not include such persons within the scope of its certification for notice purposes.

telephone numbers and e-mail addresses of each financial specialist employed by NMC at any time from August 8, 2004 to the present if defendants possesses such information.  Defendants shall make such disclosure in a data base, spreadsheet or other electronic format if defendants maintain it in that format.

**IT IS FURTHER ORDERED** that the Court approves the proposed Notice Of Class Action Lawsuit.

Dated this 24th day of September, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge