## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TODD UNDERWOOD,
on behalf of himself and other past
and present employees similarly situated,

*Plaintiffs*,

vs.

Case No. 07-2268-EFM

NMC MORTGAGE CORPORATION,
PREVIOUSLY KNOWN AS MYERS
NATIONAL MORTGAGE COMPANY,
and RANDY KENT,

*Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Decertify Conditional Collective Action (Doc.

126).  The motion has been fully briefed. For the following reasons, the Court denies the motion.

### I. Background/Facts

Thirty-two plaintiffs claim that Defendant NMC Mortgage Company ("NMC") violated the

Fair Labor Standards Act ("FLSA") and various state wage and hour laws.[1]  NMC advertised its

services and received phone calls from prospective customers.  Plaintiffs worked as "financial

specialists" for NMC.  Financial specialists worked with consumers in completing mortgage

---

[1]Plaintiffs filed an unopposed motion to amend the pretrial order to reflect that there are actually thirty-three remaining opt-in plaintiffs which the Court granted on March 27, 2009. (Doc. 140).

applications and finding lenders that met the customer's criteria for obtaining residential loan funding.

Plaintiffs worked in NMC's branch offices located in Kansas, Indiana, Georgia, Colorado, Pennsylvania, Missouri, and Arizona.  NMC's office in Overland Park, Kansas served as NMC's corporate headquarters for some time. Randy Kent was the president of NMC.[2]

Mr. Kent stated that as of February 1, 2005, NMC did not have any kind of system for recording the hours worked by financial specialists.  NMC started keeping time records in February of 2005. NMC had a uniform policy for financial specialists' schedules throughout all of its branches.

All Plaintiffs assert that Defendant required the following schedule: Mondays through Thursdays from 8:30 a.m. until 7:00 p.m.; on Friday, the schedule would rotate and one week they would work 8:30 a.m. until 2:00 p.m., and the following week they would work 8:30 a.m. until 5:00 p.m.; with the exception of Fridays, they were given a 1-hour break for lunch but they generally ate lunch at their desks for 10-15 minutes; and they were never given a break for dinner. Plaintiffs state that they were encouraged to work overtime which included working on weekends.

Financial specialists were paid on a commission basis.  Defendant states that prior to 2005, financial specialists were paid a monthly draw of $1,400 and if the specialist did not generate $1,400 in monthly commissions, the specialist would have to repay NMC the difference between the $1,400 and the amount of the commissions. Defendant states that it changed its compensation policy in 2004 or early 2005, and after the change in policy, financial specialists were paid a minimum monthly salary of $1,000 and even if the specialist did not generate $1,000 in commissions that month, he

---

[2]NMC went out of business in 2008.

could keep the $1,000 and not repay anything to NMC.

Plaintiffs dispute the compensation policy and refer the Court to Brian Weatherman's affidavit, the former regional manager of several of NMC's branches.  In Weatherman's affidavit, he states that although NMC offered specialists a bimonthly draw, the specialist would have to repay the draw the following month. It is not clear, however, whether Mr. Weatherman was addressing the compensation policy prior to or after the change in policy in 2004 or early 2005.   It is not clear whether financial specialists were paid solely on a commission basis after the policy change in early 2005.  However, all NMC branches shared the same compensation policy.

Mr. Kent stated that it was a violation of NMC's policy for a financial specialist to report overtime hours on their time sheets. Defendant also states that each financial specialist signed an acknowledgment form that stated: "Associate hereby acknowledges that it is the Company's policy to not grant overtime for financial specialist absent extraordinary circumstances.  Hence, Associate understands and agrees that he/she shall not work any overtime without first obtaining written authorization from their supervisor."

Each NMC branch office had one or more minority owners and one or more managers with input into the offices' daily operation.  NMC was the majority owner of each branch.  Defendant asserts that it was the minority owner's responsibility for ensuring that the branch office complied with federal and state laws.  Plaintiffs dispute this and state that two managers assert that they were instructed by Defendant to reject time cards indicating a financial specialist worked in excess of 40 hours. Each Plaintiff states that the hours were approved and observed by their manager and co-workers.

Plaintiffs' third amended complaint includes claims under the FLSA for failure to pay minimum and overtime wages to Plaintiffs and failure to maintain sufficient records, and violations of various state wage payment laws.[3]  Plaintiff sought to certify a conditional class, and the Court conditionally certified the class on September 24, 2007.[4]  Defendant now seeks to decertify the conditional class.

## II.  Legal Standard

The FLSA requires employers to compensate its employees engaged in commerce for a workweek longer than forty hours at a rate not less than one and one-half times the regular rate of the employee's compensation.[5]  Section 29 U.S.C. § 216(b) provides for an opt-in class action where the complaining employees are "similarly situated."[6]  The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly situated" for purposes of § 216(b).[7]  Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated."[8]  This is a more lenient standard and "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[9]  The Court has already performed this step and conditionally certified the class.

---

[3]These states include: Kansas, Indiana, Georgia, Colorado, Pennsylvania, Missouri, Arizona, Tennessee, New Mexico, and West Virginia.  Doc. 84. One Plaintiff also asserted claims relating to the Americans with Disabilities Act ("ADA"), but those claims have since been dismissed.  Doc. 139.

[4]Doc. 34, Memorandum and Order Granting Plaintiffs' Motion for Conditional Collective Action and Expedited Notice to Potential Opt-in Plaintiffs.

[5]29 U.S.C. § 207(a)(1).

[6]29 U.S.C. § 216(b).

[7]*See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

[8]*Id.* at 1102.

[9]*Id.* (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

At the close of discovery, and usually prompted by a motion to decertify, the court revisits the class certification issue and utilizes a more strict standard to determine whether the plaintiffs are "similarly situated."[10] At this stage, the court is required to review several factors which include: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[11]   Defendant seeks to decertify the conditional class, and the Court is now at the second step.

## III.  Analysis

The Court will consider all three factors in considering Defendant's motion to decertify the class.

### 1. Disparate Factual and Employment Settings of the Individual Plaintiffs

Defendant states that the factual and employment settings are not nearly identical because each Plaintiff is making a different claim based on different circumstances.  Defendant contends that there will be a fact-specific individualized inquiry into Plaintiffs' awareness of the overtime policy and whether it was compelled by his or her manager.  Because there are thirty-two Plaintiffs that worked in seven different branch offices, Defendant asserts that the trial will be complicated.

Plaintiffs assert that the factual and employment settings are virtually identical because they were subject to an identical payment and scheduling scheme.  Despite the fact that their locations varied, Plaintiffs assert that each NMC branch operated in an identical fashion.

---

[10]*Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431, 432 (D. Kan. 2007); *see also Thiessen*, 267 F.3d at 1102-03.

[11]*Thiessen*, 267 F.3d  at 1103.

Factors that may be important in assessing whether employees are similarly situated include job duties, geographical location, supervision, and salary.[12] Here, each Plaintiff was employed as a financial specialist, and each performed the same job duties.  Plaintiffs may be similarly situated when they have similar, although not identical, positions.[13]

The geographic locations vary, however, because Plaintiffs worked in seven different states. In addition, there were different supervisors in the different states.  Because there are several different states involved, there will be testimony by different supervisors regarding overtime.  Each Plaintiff, however, alleged the exact same schedule regardless of branch location, and Defendant admitted that there was a uniform policy for financial specialists' schedules throughout all of its branches.  As the issue is whether Defendant violated the FLSA by failing to compensate Plaintiffs with overtime wages, the difference in geographic location and supervisors is not that important.[14]

With regard to salary,  the same compensation plan applied to all Plaintiffs because they were all financial specialists.  Although there is a dispute regarding whether the compensation plan changed in 2004 or 2005 from a solely commission basis to a minimum monthly wage, it is undisputed that all financial specialists were subject to the same plan.  In addition, each Plaintiff alleged the exact same schedule regardless of branch location.  All Plaintiffs state that they were required to work over 40 hours a week.  Each Plaintiff states that their time card would be rejected if they indicated that they worked in excess of 40 hours.  Although Plaintiffs worked at different

---

[12]*See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 996 F.Supp. 1071, 1081 (D. Kan. 1998), *class decertified in Thiessen v. Gen.. Elec. Capital Corp.*, 13 F.Supp.2d 1131 (D. Kan. 1998)(*rev'd*, 267 F.3d 1095).

[13]*See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001).

[14]*See, e.g. Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000) (stating "variations in the plaintiffs' duties, job locations, and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action.")

geographic locations, it appears that all Plaintiffs were subject to the same schedule and compensation policy.

In sum, each Plaintiff is asserting the same claim that Defendant did not pay them for overtime hours although they worked overtime.  On balance, it appears that this factor weigh in Plaintiffs' favor, and the Court concludes that the factual and employment settings are similar.

### 2. Various Defenses available to Defendant Which Appear to be Individual to Each Plaintiff

Defendant asserts that its primary defense if the case proceeds to trial will be highly individualized as the defense is of a factual nature, rather than a legal nature.  Defendant, however, has the same defense to every Plaintiff, i.e, Plaintiffs did not work overtime and even if Plaintiffs did work overtime, Plaintiffs were appropriately compensated.[15]

"The need for individual factual determinations is not fatal to certification of a FLSA collective action."[16]  In addition, Defendant's defense is contingent on certain similar facts and factual findings. Defendant contends that company policy did not allow overtime, and Defendant contends that each Plaintiff signed a form acknowledging this policy.  The same scheduling policy and the same compensation policy applied to all branches.[17]  Each Plaintiff asserts that overtime was encouraged and that their schedules required overtime but that they were instructed not to record hours in excess of 40 on their time cards. It appears that common issues still predominate.

---

[15]Defendant's other defense was that it was exempt from paying overtime because it was a "retail or service establishment" under the FLSA.  The Court recently concluded that this exemption does not apply to Defendant. Doc. 141. Therefore, Defendant's assertion that it would be especially problematic in defining how each state would characterize NMC as a mortgage "broker" or "lender" is moot.

[16]*Chabrier v. Wilmington Fin., Inc.*, 2008 WL 938872, at *3 (E.D. Pa. 2008).

[17]The Tenth Circuit in *Thiessen* also noted that even though there would be highly individualized defenses, the fact that those defenses would not be at issue until after the initial issue of whether defendant had in place a pattern or practice of discrimination weighed against decertifying the class. *Thiessen*, 267 F.3d at 1107.

Only after there is an initial determination of whether Defendant required Plaintiffs to work overtime or whether Defendant forbade overtime will the question become more individualized as to whether Plaintiffs did work overtime and the amount of such overtime.  This, however, has more to do with Plaintiffs' damages as there will be a determination of the hours Plaintiffs worked and if the Plaintiffs were appropriately compensated.[18] "The need for this type of straightforward inquiry is not sufficient to defeat the propriety of a collective action."[19]  Accordingly, although there may be certain individualized inquiries, the fact that the same defense equally applies to each Plaintiff works in Plaintiffs' favor.

### 3. Fairness and Procedural Considerations

Finally, fairness and procedural considerations are important when addressing whether plaintiffs are similarly situated.[20]  "[T]he primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."[21]

Defendant asserts that proceeding as a class action presents case management problems. Plaintiffs state that certification serves the purposes of a collective action under the FLSA and that

---

[18]The parties state that there are ten different state laws that may be at issue. Defendant and Plaintiffs , however, agree that  Plaintiffs worked in seven different states.  The fact that there are seven or ten different state laws to apply would appear to favor Defendant in that there may be individualized defenses to each state law. However, this is only one factor in favor of Defendant. In addition, Defendant has not asserted how those defenses might be different.  Neither party specifically addresses what differences there may be between each state's wage and hour laws or the FLSA, and it appears that the state law claims may be somewhat duplicative to the FLSA in that Plaintiffs claim that Defendant violated the minimum wage and overtime laws of their respective states.  As such, it appears that the inquiry would relate to Plaintiffs' damages.

[19]*Johnson v. Big Lots Stores, Inc.*, 2007 WL 5200224, at *9 (E.D. La. 2007).

[20]*See Thiessen*, 267 F.3d at 1103.

[21]*Moss v. Crawford & Co.*, 201 F.R.D. at 410 (citing *Hoffman-La Roche, Inc.*, 493 U.S. 165, 170 (1989)).

-8-

Plaintiffs would be back at "square one" if the class is decertified.  Defendant contends that if the Court is particularly concerned with placing opt-in Plaintiffs back at square one then the Court should consider leaving only the eight Plaintiffs who worked at NMC's branch in Kansas in the action because this would make the case more manageable.  However, dismissing twenty-five Plaintiffs that were allegedly subject to the same compensation plan and same schedule does not seem to further fairness and procedural considerations because twenty-five Plaintiffs would be back at "square one" while eight Plaintiffs would be proceeding to trial on the exact same issue.

Allowing Plaintiffs to proceed in one action appears to be the more efficient and preferable method than individual litigation and serves the purpose of the FLSA.  Although there will be some individualized fact determinations, particularly as to damages, it is preferable to have one lawsuit than to have thirty-two lawsuits at square one without the benefit of pooled resources.

**IT IS ACCORDINGLY ORDERED** this 11th day of May, 2009  that Defendant's Motion to Decertify Conditional Collective Action (Doc. 126) is hereby DENIED.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE